IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO.: 4:24-cr-098-05 |
| ERICK COLLINS, | |
| Defendant. | |

**O R D E R**

After a careful de novo review of the entire record, the Court concurs with the Magistrate Judge's August 14, 2025, Report and Recommendation, (doc. 323), to which Defendant has objected, (doc. 332). Accordingly, for the reasons explained below, Defendant's Objection, (doc. 332), is **OVERRULED**, and the Court **ADOPTS** the Report and Recommendation, (doc. 323), as supplemented by this Order, as the opinion of the Court. See, e.g., 28 U.S.C. § 636(b) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). Collins' Motion to Suppress Statements, as supplemented, is **GRANTED**. (Docs. 223 & 307). His Motion to Suppress Evidence is **DENIED**. (Doc. 224.)

As the Magistrate Judge explained, Collins is charged with one count of conspiracy to possess with intent to distribute and to distribute controlled substances and one count of possession with intent to distribute a controlled substance. (Doc. 323, p. 1; see also doc. 3, pp. 2-3, 18). The circumstances leading to the instant proceedings commenced with Collins' arrest at a Statesboro, Georgia motel in March 2024. (Doc. 323, p. 2.) The Report and Recommendation provides a more detailed account of the arrest. (Id., p. 2-3.) After Collins was arrested, he spoke to several of the officers. (Id., p. 3.) Collins initiated the conversation, but after "a lull," one of the officers

asked him several times whether there was "anything here?," i.e., whether there was contraband in the motel room. (Id.) Collins' Motion seeks to suppress his response to that inquiry, among other reasons, because it was "interrogation," within the meaning of Miranda v. Arizona, 384 U.S. 436 (1966), and he was not provided with the requisite warnings. (Id., pp. 3-4.) The Magistrate Judge considered, and rejected, the Government's arguments that the questions were not Miranda interrogation and that, even if they were, the statements were admissible under the "public safety exception." (Id., pp. 4-15.) No party objects to the Magistrate Judge's analysis or conclusion. (See, e.g., doc. 332.) After a careful de novo review, the Court concurs with that analysis and conclusion. The Magistrate Judge's recommendation that Collins' Motion to Suppress Statements should be granted is **ADOPTED**. (Doc. 323, in part.) Collins' Motion to Suppress statements, as supplemented, is **GRANTED**. (Docs. 223 & 307.)

The Magistrate Judge then considered Collins' Motion to Suppress evidence seized from the motel room where Collins was arrested. (Doc. 323, pp. 16-26.) The Magistrate Judge first discussed whether Collins had established a sufficient expectation of privacy in the area searched to suppress the evidence discovered there, so-called "Fourth Amendment standing.". (Id., pp. 16-23.) "The concept of standing in Fourth Amendment cases [is] a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." Byrd v. United States, 584 U.S. 395, 410 (2018). As the Eleventh Circuit has explained:

> The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy. United States v. Robinson, 62 F.3d 1325, 1328 (11th Cir. 1995). "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." Id. (internal quotation marks and brackets omitted); see also California v. Greenwood, 486 U.S. 35, 39 . . . (1988) ("The warrantless search and seizure of the garbage bags left at the curb outside the Greenwood house would violate the Fourth Amendment

only if respondents manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable.").

United States v. Segura-Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006).

Collins does not dispute either that he has the burden to establish his standing or the requirements to discharge that burden. (See generally doc. 332.) He does dispute the Magistrate Judge's conclusion that he has not borne that burden. The Magistrate Judge explained that the record established at the hearing focused almost exclusively on facts related to Collins' presence in the motel room. (See doc. 323, pp. 22-23.) The record contains no evidence that Collins was the registered occupant of the room. On the contrary, to the extent that it contains any evidence of any formal occupancy of the room, it indicates that Collins was not the registered occupant. (See, e.g., doc. 318, p. 3 (citing Govt. Ex. 3.)) Although the Court will not draw the negative inference, it is striking that, even in his Objection, Collins does not assert that he was the registered occupant or had express permission from any such registered occupant. (See, e.g., doc. 332, pp. 5-6 (asserting that Collins "was in Room 19"), pp. 6-7 (asserting Collins "was an overnight guest," and "using the hotel for lodging"). Whether or not Collins had some permission from the formal registered occupant of the room, the Magistrate Judge's conclusion that, in the absence of any evidence that Collins' presence was more than "itinerant," he failed to establish his Fourth Amendment standing is correct.

Collins' Objection focuses on the reasonable privacy expectations of registered overnight guests in hotels and motels. (Doc. 332, pp. 4-5.) He points to the Ninth Circuit's opinion in United States v. Bautista, 362 F.3d 584 (9th Cir. 2004), in support of his contention that some legal termination of occupancy is "critical" in evaluating the guest's standing. (Id.) However, that case, and the other cases he cites, concern the

3

privacy expectations of <u>registered</u> guests.  See <u>Bautista</u>, 362 F.3d at 586 (noting that the room in question "was reserved in Bautista's name[ and t]he reservation . . . listed Bautista as the sole guest."); see also <u>United States v. Cunag</u>, 386 F.3d 888, 890, 895 (9th Cir. 2004) ("The hotel rented Cunag room 320, giving him two keys," and discussing Ninth Circuit authority that "even if the occupant of a hotel room <u>has procured</u> that room by fraud," the occupant retains a Fourth Amendment interest (emphasis added)); <u>United States v. Varnedore</u>, 73 F. App'x 356, 358 (10th Cir. 2003) (noting that Defendant "checked into a Tulsa motel and rented a room for two days.").  As noted above, the Magistrate Judge's conclusion was based on Collins' failure to present any evidence that he was the registered occupant of the room.  (Doc. 323, pp. 22-23.)  His reliance on cases establishing a registered occupant's expectations of privacy in a hotel or motel room are, therefore, inapposite.

Given the lack of any evidence that Collins had any formal right to occupy the room, the facts he points to in his Objection, <u>i.e.</u> that he "had his personal items in the room," and "was under the covers in the bed, alone, and trying to sleep," (<u>see, e.g.</u>, doc. 332, p. 7), support, at most, his <u>subjective</u> expectation of privacy.  As the Magistrate Judge's analysis recognizes, those facts do nothing to establish the <u>legitimacy</u> of any such expectation.  At the outset, the Court assumes, <u>arguendo</u>, that Collins' characterization of himself as "an overnight guest" in the room is correct.  (<u>Id.</u>, p. 8.)  Although the Report and Recommendation did not use Defendant's preferred terminology, it recognized precisely the same facts that he relies upon in his Objection.  (<u>See</u> doc. 323, p. 22.)  That recognition of those facts led the Magistrate Judge to consider the Eleventh Circuit's discussion of such "guests" in <u>United States v. Cooper</u>, 203 F.3d 1279 (11th Cir. 2000).

4

(Id., pp. 21-22.)  Cooper suggests that there are at least some individuals, who are "overnight guests" in hotel rooms who, regardless of their subjective expectations of privacy, lack Fourth Amendment standing.  See 203 F.3d 1279, 1285 n. 3.  The only fact in the record remotely probative of the legitimacy of Collins' occupancy is that the clerk of the motel recognized him and directed officers to the room as his location.  (See, e.g., doc. 332 at 9.)  However, that recognition, without further explanation, is entirely consistent with merely regular, even if entirely illegitimate, occupancy.  Collins' showing is entirely consistent with the possibility that he was "squatting," albeit perhaps regularly, in the room.  A "squatter" does not acquire an expectation of privacy "that society is prepared to recognize," Segura-Baltazar, 448 F.3d at 1286, merely by repeated and open trespass.  Cf. United States v. Guzman, ___ F. 4th ___, 2025 WL 2263950, at *4 (10th Cir. Aug. 8, 2025) (recognizing that "squatters and trespassers," and "individuals whose presence is otherwise wrongful despite the owner's consent" as lacking an objectively reasonable expectation of privacy).  As the Magistrate Judge found, Collins failed to present sufficient evidence supporting the legitimacy of his occupancy and therefore failed to discharge his burden to establish his Fourth Amendment standing.[1]  (Doc. 323, p. 23.) Collins' objection to that conclusion is, therefore, **OVERRULED**.

---

[1] While the Court finds the Magistrate Judge's conclusion that Collins failed to bear his burden compelling, and like the court in Cooper, does not need to reach the issue of what facts, if any, might establish the Fourth Amendment standing of a non-registered overnight hotel "guest," the implications of Collins' argument emphasize its weakness. As discussed above, while Collins presented evidence that he regarded the room as available for his intimate use, he presented no evidence that he had any formal permission from any individual with legitimate authority over the room to do so.  If a defendant's behavior alone were sufficient to establish Fourth Amendment standing, it would render the "objective" prong of the analysis completely superfluous.  Defendants who more brazenly treated locations as their own private domain would thereby acquire greater Fourth Amendment protections than defendants who abided social and legal limitations.  That would expand the Fourth Amendment's protections far beyond its text and the interpreting authorities.

Collins also objects to the Magistrate Judge's conclusion that, notwithstanding the determination that his statement was procured in violation of Miranda, the evidence could not be suppressed as "fruit of the poisonous tree." (Doc. 332, pp. 14-17).[2] The Magistrate Judge recognized that the Supreme Court has rejected the argument that violations of Miranda can support suppression of subsequently discovered physical evidence. (Doc. 323, p. 24 (quoting United States v. Patane, 542 U.S. 630, 634 (2004)).) Collins' Objection attempts to distinguish Patane and its progeny based on the purported involuntariness of the Miranda-violative statements at issue. (Doc. 332, pp. 14-16.)

Collins' Objection correctly points out that physical evidence discovered as a result of a coerced confession, unlike evidence discovered as a result of a Miranda violation, is subject to suppression. (Doc. 332, pp. 14-15 (citing United States v. Lall, 607 F.3d 1277, 1291 (11th Cir. 2010)).) In Lall, the Eleventh Circuit explained that "[w]hile a confession obtained in violation of Miranda is inadmissible, the physical evidence derived from such a confession is not subject to the Miranda exclusionary rule[,] . . . [but t]he rule is otherwise for evidence derived from an involuntary confession obtained in violation of the Due Process Clause." Lall, 607 F.3d at 1291 (citing Oregon v. Elstad, 470 U.S. 298, 305-06 (1985); Michigan v. Tucker, 417 U.S. 433, 450 (1974)). Given the extremely limited treatment of the issue by the parties before the Magistrate Judge, the Report and Recommendation addresses the issue by pointing out that "there is no indication in the

---

[2] Collins also objects to the Magistrate Judge's skepticism of the sufficiency of his presentation of the fruit-of-the-poisonous-tree argument. (See doc. 332, pp. 10-13.) However, the Magistrate Judge did not reject the argument as insufficiently presented and the Court agrees with the Magistrate Judge that the fruit-of-the-poisonous-tree argument is only addressed "cursorily," by the parties. (Doc. 323, p. 23.) Regardless, since the Magistrate Judge went on to consider the argument on its merits, (id., pp. 24-25), as does the Court below, any dispute about the quality of its presentation is moot.

6

record of coercion." (Doc. 323, p. 25 (citing Colorado v. Connelly, 479 U.S. 157, 167 (1986)).

Collins ambitiously attempts to tie his almost wholly implicit argument that his statements were involuntary to a bare reference in his original Motion to Suppress Statements to the Government's burden to prove that statements introduced at trial were voluntary. (See doc. 332, p. 14 (citing Doc. 223, p. 2).) Despite the novelty of the argument,[3] it remains inadequate to suppress the fruits of the search. First, the Court must assume, without deciding, that Defendant's failure to establish his Fourth Amendment standing to challenge the search of the room does not preclude him from asserting the instant argument at all and that there is a causal connection between the statement and the discovery of the physical evidence. Even given those assumptions, however, Collins' argument fails because it fails to establish that any of his statements were coerced, as opposed to merely involuntary, in the absence of Miranda warnings.

Lall refers to the confession supporting suppression of physical evidence as both "involuntary" and "coerced." 607 F.3d at 1291. As Defendant points out, any Miranda violation raises the presumption of involuntariness. (Doc. 332, p. 15); see also, e.g.,

---

[3] While the Court does not intend to belabor the extent to which the substance of Defendant's coercion argument is a novelty introduced in his Objection, the entirety of the reference he relies upon is: "In order for the government to use any statements attributed to Mr. Collins, it must first prove that the statements were not procured in violation of Miranda and that the statements were otherwise voluntarily made." (Doc. 223, p. 2.) There is no reference to the purported coercion of his statements in his Motion to Suppress the physical evidence. (See generally doc. 224.) Similarly, there is no reference to the alleged coercion in his post-hearing supplement. (See generally doc. 307). Finally, there was no argument at the hearing that the statements were coerced. To be sure, there were arguments that Collins' purported consent to the search was coerced, but no implication of the argument raised in the Objection. (See doc. 332, pp. 15-16.) Given that the argument is substantially, if not entirely, novel, the Court has discretion not to consider it. See, e.g., Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009). The Court will exercise its discretion to consider the argument. However, despite that discretionary concession to Defendant, the Court rejects the implied assertion that a single reference to a generally applicable legal principle in a motion is sufficient to preserve every possible argument applying that legal principle. If a party wants a particular argument addressed, it must be raised explicitly. Cf. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." (citation omitted)).

Elstad, 470 U.S. at 307 ("Failure to administer Miranda warnings creates a presumption of compulsion."). However, if every Miranda-violative statement were also "coerced," Lall's holding would be inconsistent with the holdings in Patene and its progeny. Thus, courts recognize the existence of "voluntary, although unwarned, statement[s]." United States v. Jackson, 506 F.3d 1358, 1361 (11th Cir. 2007).

As Lall explains, suppression of physical evidence is justified only if its discovery is "derived form an involuntary confession obtained in violation of the Due Process Clause." 607 F.3d at 1291. The Supreme Court explained the scope of the Due Process Clause's protection in Colorado v. Connelly. Connelly expressly held "that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause . . . ." 479 U.S. at 167. That Lall's holding depends upon coercion, and not mere "involuntariness," is supported by Judge Rosenbaum's recent dissent in United States v. Morgan, 143 F.4th 1264 (11th Cir. 2025). She describes Lall as holding that the "statements and the resulting evidence had to be suppressed because the officer had coerced Lall into confessing when he promised Lall he wouldn't charge him." Morgan, 143 F.4th at 1288 (Rosenbaum, J. dissenting) (emphasis added). Thus, the suppression of physical evidence as the fruit of a prior statement is only available if the statement is "coerced," as that term is used in Connelly.

Having disentangled the fact that Collins' statements were involuntary, because he was not given Miranda warnings, from the question of whether his statements were compelled or coerced, such that physical evidence even purportedly resulting from them might be suppressed, the Court can consider the facts he points to as showing coercion. Coercion, in Connelly's sense, depends upon the totality of the circumstances. See, e.g.,

Miller v. Dugger, 838 F.2d 1530, 1536 (11th Cir. 1988) ("Voluntariness is determined by an assessment of the totality of the circumstances, but that assessment must include an element of official overreaching to warrant a conclusion that a confession is involuntary under constitutional law.").

In support of his coercion argument, Collins first points to the interrogating officer's favorable response to Collins' wholly spontaneous offer of cooperation and Saxon's statement that "[o]nce [Collins] go[es] to jail, ain't nothing [Saxon] can do for [Collins]," as a "promise." (Doc. 332, p. 15.) "Making . . . a promise," can be coercive, under Connelly. See, e.g., United States v. Thompson, 422 F.3d 1285, 1295-96 (11th Cir. 2005) (internal quotation marks and citations omitted)). Assuming that the officer's statement is a "promise" at all, however, "court[s] will not . . . readily imply an improper promise or misrepresentation from vague or ambiguous statements by law enforcement officers. This is particularly so with respect to promises of leniency." United States v. Haak, 884 F.3d 400, 410 (2d Cir. 2018) (citation omitted); see also, United States v. Burgess, 33 F. App'x 386, 389 (10th Cir. 2002) ("vague and non-committal . . . promises are not coercive." (citation omitted)). He also points to the forceful circumstances of the arrest. (Doc. 332, pp. 15-16.) The circumstances of officers' entry into the room and the fact that he was previously tased and restrained do not constitute coercion. See, e.g., Shiner v. Wainwright, 715 F.2d 1452, 1456 (11th Cir. 1983) ("The use of handcuffs does not establish coercion" (citation omitted)); United States v. Williard, 2010 WL 3784944, at *4 (E.D. Va. Sept. 20, 2010) ("officers' arrival at [defendant's] home early in the morning[ and] use of a battering ram on his door" were not coercive); United States v. Mack, 2009 WL 580430, at *3 (M.D. La. Mar. 6, 2009) (use of taser to subdue defendant

prior to interrogation was not sufficient to establish coercion of subsequent statements). Here, the body-worn camera recording shows that, although he was restrained, Collins was seated in a chair, only two officers participated in the questioning, they did not raise their voices or make any threats, and, significantly, it was Collins who initiated the conversation by offering to cooperate. In the totality of the circumstances, then, the Court cannot find that Collins' statement was coerced, within the meaning of Connelly, even if it was involuntary, within the meaning of Miranda.

Given that Collins' statement was not coerced, any request for suppression of physical evidence is governed by Patane and Jackson, and not by Lall. Thus, even assuming that Collins' lack of Fourth Amendment standing does not preclude suppression, and that the discovery of the physical evidence was the result of his statements, suppression of that evidence is not warranted. Accordingly, to the extent that Collins' argument that his statement was sufficiently coerced that suppression of the physical evidence is warranted under Lall is construed as an objection to the Report and Recommendation, it is **OVERRULED**. To the extent that argument is construed as an alternative argument for suppression of the physical evidence, raised for the first time in his Objection, it fails. The Report and Recommendation's determination that Collins failed to establish his Fourth Amendment standing to challenge the search of the room is, therefore, **ADOPTED**, (doc. 323, in part), as supplemented above, and Collins' Motion to Suppress Evidence is **DENIED**, (doc. 224).

In summary, after a careful de novo review of the entire record, the Court concurs with the Magistrate Judge's August 14, 2025, Report and Recommendation, (doc. 323), to which Defendant has objected, (doc. 332). Accordingly, the Court **ADOPTS** the Report

and Recommendation, (doc. 323), as supplemented by this Order, as the opinion of the Court.  See, e.g., 28 U.S.C. § 636(b) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). Collins' Motion to Suppress Statements, as supplemented, is **GRANTED**.  (Docs. 223 & 307).  His Motion to Suppress Evidence is **DENIED**.  (Doc. 224.)

**SO ORDERED**, this 12th day of September, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA